IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GEORGE JOHNSON,

        Plaintiff,                        No. CIV S-04-2255 LKK EFB P

    vs.

JOSEPH SHERMAN, et al.,

        Defendants.             <u>ORDER AND</u>
                                           <u>FINDINGS AND RECOMMENDATIONS</u>

        Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis* with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that in 2004 defendants at California State Prison Sacramento (CSPS) violated his right to freely exercise his Rastafarian religion by forcing him to submit to tuberculosis (TB) skin tests and placing him in administrative segregation for resisting. Before the court is plaintiff's motion for a preliminary injunction.

**I.    PROCEDURAL HISTORY**

        On March 31, 2006, and May 4, 2006, plaintiff moved the court for a preliminary injunction, stating that he would soon be subjected to further forced TB skin tests. On July 19, 2006, this court ordered defendants to file and serve a response to the May 4, 2006, motion. On August 3, 2006, defendants filed their opposition which included a declaration by A. Traquina, Chief Medical Officer at CSPS. Paragraph 5 of that declaration states that "a tuberculosis skin

test is [the] only test available to discover latent tuberculosis." Plaintiff's reply, filed August 15, 2006, challenges this medical conclusion and argues that in *Reynolds v. Goord*, 103 F.Supp.2d 316 (S.D.N.Y. 2000), the court granted a preliminary injunction to a Rastafarian inmate at Green Haven Correctional Facility because the court found that other test methods, such as examination of chest x-ray or sputum smear are sufficient to diagnose pulmonary TB. This court's order filed February 15, 2007, directed defendants to file a supplemental declaration and brief clarifying and expanding on Dr. Traquina's declaration regarding the availability of any medically accepted alternative tests for latent tuberculosis. On March 2, 2007, defendants filed a motion for an extension of time in which to comply with that order and to submit a reply brief, which have since been filed. Having duly considered defendants' responses to the court's query, for the reasons explained below, the court finds that plaintiff is not entitled to a preliminary injunction.

## II.    STANDARDS FOR INJUNCTIVE RELIEF

The standards for preliminary injunctive relief are well established. A preliminary injunction represents the exercise of a very far reaching power never to be indulged except in a case clearly warranting it. *Dymo Indus. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964). A preliminary injunction will not issue unless necessary because threatened injury would impair the court's ability to grant effective relief in a pending action. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984); *Gon v. First State Ins. Co.*, 871 F.2d 863 (9th Cir. 1989). To prevail upon an application for a prohibitory preliminary injunction, plaintiff must demonstrate either probable success on the merits and the possibility of irreparable injury, or serious questions regarding the merits of his claims and a balance of hardships tipping sharply in his favor. *Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1134 (9th Cir. 1979). If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly. *Benda v. Grand Lodge of the International Association of Machinists*, 584 F.2d 308, 315 (9th Cir. 1978). The threatened injury must be immediate. *Los Angeles Memorial Coliseum Comm'n v. National*

*Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980). Since the remedy is equitable in nature, there must be no adequate remedy at law. *Stanley v. University of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994). If the relief sought is mandatory rather than prohibitory, the balance must more clearly favor the applicant. *Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993).

Where a moving party challenges " 'government action taken in the public interest pursuant to a statutory or regulatory scheme,' " the moving party is required to demonstrate irreparable harm and a likelihood of success on the merits. *Able v. United States*, 44 F.3d 128, 131 (2d Cir.1995) (per curiam) (quoting *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir.1989)); *see also Catanzano v. Dowling*, 60 F.3d 113, 117 (2d Cir.1995).

Additionally, in cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the Court finds requires preliminary relief, and be the least restrictive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

Here, plaintiff has failed to show that he is likely to prevail on the merits. Assuming that he has at least raised serious questions going to the merits, he has not demonstrated that the balance of relative hardships sharply tips in favor of granting preliminary injunctive relief. Nor does the public interest favor the injunction sought here.

**III.   ANALYSIS**

As a threshold matter, defendants note that plaintiff's motion seeks to prevent defendants Flint, Lea, Sherman, and CSPS from administering tuberculosis skin tests to him. However, plaintiff is now housed at California State Prison Solano (Solano). The defendants all work at CSPS. Therefore, Flint, Lea, Sherman, and CSPS do not pose any threat to plaintiff of administering an imminent tuberculosis tests. Plaintiff responded to this concern by filing on March 1, 2007, a motion to amend his complaint, seeking to add as defendants Lieutenant B.C. Roszko, Sergeant Smith, Captain C. Hall, Alvaro C. Traquina, A. Noriega, Warden D.K. Sisto, Dr. Rohrer, and the Director of the California Department of Corrections and Rehabilitation.

Because of questions of ultimate futility to any amendments to the complaint, the court will address the motion to amend at the same time that it considers and addresses defendants' pending motion for summary judgment. For purposes of this motion for preliminary injunction, the court will assume that plaintiff has named the proper parties. However, even with that assumption, plaintiff fails to meet the standards for preliminary injunctive relief for the reasons discussed below.

### A.   Likelihood of Success on the Merits

Plaintiff challenges a policy of the California Department of Corrections and Rehabilitation (CDCR), mandating that all inmates be given skin tests to detect latent tuberculosis, which is based on California State law.[1] He seeks relief under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA). Section 3 of RLUIPA provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A).

### 1.   Substantial Burden

As an initial matter, a plaintiff alleging a violation of RLUIPA must demonstrate that his right to the free exercise of religion has been substantially burdened. 42 U.S.C. § 2000cc-1(a). Plaintiff claims that, under the tenets of Rastafarianism, it is a sin to take artificial substances into the body. Defendants contend that "plaintiff has not offered any proof from Rastafarian authority that tuberculosis testing violates a tenet of his religious beliefs." Defs.' Opp'n at 6.

---

[1] *See* California Penal Code §§ 7570, *et seq.*, requiring prison medical personnel to "use every available means to ascertain the existence of, and to immediately investigate all reported or suspected cases of, tuberculosis," and stating that "any inmate ... who refuses to submit to an examination ... for tuberculosis ... shall be tested involuntarily."

A substantial burden exists where the state "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of the Indiana Employment Sec. Div.*, 450 U.S. 707, 718 (1981); *see Sherbert v. Verner*, 374 U.S. 398, 404 (finding substantial burden where individual is forced to "choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion ..., on the other hand").

Documentary evidence from plaintiff's medical file, provided to the court as Exhibit B to defendants' opposition to the instant motion, demonstrates that plaintiff has consistently refused tuberculin skin testing and has stated to medical staff that it is in conflict with his religious beliefs. Evidence shows that he refused testing on April 26, 2003, February 4, 2004, April 26, 2004, and May 3, 2005. Defs.' Opp'n, Ex. B, at 9,15, 21, 24. Plaintiff's steadfast adherence to his claim that submitting to the tuberculin skin test violates the tenets of his religion suggests that his right to the free exercise of his religion has been burdened, perhaps substantially so. Further, the judiciary has a limited function, and "determining whether a particular practice is mandated by the orthodox doctrine of a sect injects the court into religious controversies in a manner that the First Amendment, in restricting the making of law 'respecting an establishment of religion,' specifically prohibits." *Rouser v. White*, 944 F. Supp. 1447, 1454, 1455 (1996). The court's scrutiny extends only to whether plaintiff sincerely holds a particular religious belief, as may be evidenced circumstantially by "the testimony of plaintiff, plaintiff's conduct, a demonstrated willingness to forego privileges by virtue of religious commandment, the consistency of plaintiff's adherence, and other evidence reasonably having a tendency to prove or disprove the issue." *Id*. at 1455, n.14. Accordingly, the court proceeds with the assumption that tuberculin skin testing substantially burdens plaintiff's particular religious beliefs. As discussed below, this significantly elevates defendants' burden to justify the imposition of the skin testing on plaintiff.

////

### 2. Compelling State Interest

Once a plaintiff makes a threshold showing of a substantial burden on the right of free exercise, the government must demonstrate that the application of the burden to the individual furthers a compelling state interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb-1(b).

The CDCR's testing program, which is at issue here, has two compelling objectives: to locate inmates with active tuberculosis and to locate all inmates and correctional staff infected with latent tuberculosis in an effort to prevent those individuals from developing the active disease. Supp. Ex. A at ¶ 10. Latent tuberculosis is asymptomatic. *Id.* at ¶ 11. Approximately ten percent of the general population will develop active tuberculosis after being infected with latent tuberculosis. *Id.* Even after many years, inactive tuberculosis bacteria may become active when body defenses become weakened. *Id.* This may occur due to aging, human immunodeficiency virus (HIV) infection, drug or alcohol abuse, or diabetes. *Id.* Prisoners have a higher incidence of drug or alcohol abuse and HIV infection than the general population. They are, therefore, more at risk and more likely to develop active tuberculosis from a latent tuberculosis infection. *Id.* Defendants have established a compelling interest in protecting inmates and correctional staff from tuberculosis. *See Thompson v. City of Los Angeles*, 885 F.2d 1439, 1447 (9th Cir.1989) (prison officials have a compelling interest in preventing disease).

### 3. Least Restrictive Means

Defendants must show that the administration of the tuberculin skin test is the least restrictive means of furthering the CDCR's compelling interest. Defendants assert that there are no other means of testing for latent tuberculosis that are proven to be as effective as the skin test at issue here. Plaintiff argues that subjecting him to an annual x-ray or providing periodic sputum samples would be an effective means of monitoring for TB. The court takes as a given the sincerity of plaintiff's belief, but plaintiff fails to appreciate the very important distinction between testing for the active and latent forms of the disease.

6

A chest x-ray is one of several tests used to determine whether a patient suffers from active tuberculosis. Ex. A at ¶ 3. However, a tuberculosis skin test determines whether an inmate has been exposed to the tuberculosis disease. Even if the inmate does not have active tuberculosis, the skin test will establish whether he was exposed to the disease. The test will alert prison officials to the presence of the disease, reveal the location and extent of the outbreak, and the effectiveness of treatment measures. *Id.* at ¶ 4. A chest x-ray does not provide any of this information. The tuberculosis skin test is the only medically accepted test available to discover latent tuberculosis in California's prisons. *Id.* at ¶ 5.

The court therefore finds that, although the administration of the tuberculin skin test substantially burdens plaintiff's free exercise of his religion, it is the least restrictive means for achieving the CDCR's compelling interest in controlling the spread of tuberculosis in its prisons. Plaintiff has therefore failed to establish a likelihood of success on the merits of his claim. Indeed, given the compelling interest in controlling the spread of the disease among the closely confined population within the prison and, further, that the means used is the least restrictive possible to achieve that goal, it is highly unlikely that plaintiff can prevail on the merits of either his statutory or constitutional claims.

### B.   Irreparable Harm

Generally, irreparable harm is presumed if a violation of the Constitution is shown. *Goldie's Bookstore, Inc. v. Superior Court of the State of California,* 739 F.2d 466, 472 (9th Cir.1984). Indeed, the loss of First Amendment freedoms, even for minimal periods of time, constitutes irreparable injury. *See, e.g., Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality opinion) (freedom of association) (*citing New York Times Co. v. United States*, 403 U.S. 713, 91 (1971) (political speech)).[2]

---

[2] Where an injunction is sought against a governmental entity, the party requesting relief must show a threat of "great and immediate," not conjectural or hypothetical, irreparable harm. *City of Los Angeles v. Lyons,* 461 U.S. 95, 113 (1983); *see also Orantes-Hernandez v. Thornburgh,* 919 F.2d 549, 557 (9th Cir.1990).

7

Here, where plaintiff has failed to demonstrate a likelihood of success on the merits, he must under the preliminary injunction standard show more than the possibility of irreparable injury. At most, plaintiff has raised serious questions at to the merits of his claims. Therefore, he must show that the balance of relative hardships tips sharply in his favor and that the public interest favors granting the requested injunction. However, as shown above, the balance of relative harms tips decidedly against granting a preliminary injunction. Preventing the spread of tuberculosis among the closely confined population within the prison by use of the least restrictive means possible greatly outweighs the harm posed to the plaintiff by submitting to the skin test. While the harm to plaintiff's ability to practice his belief is no doubt burdened, the CDCR has a grave responsibility to protect the inmate populations confined within its prisons from the spread of a highly contagious and debilitating disease. Indeed, it would be irresponsible to jeopardize the many other inmates by not requiring the testing at issue here. For that very reason, it is not in the public interest to grant the injunction sought here.

**IV.    CONCLUSION**

For the reasons stated above, plaintiff is not entitled to a preliminary injunction.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for leave to amend shall be considered and decided concurrently with the pending motion for summary judgement filed by defendants.

2. Defendants shall file a new motion for summary judgment, within twenty days of the service of this order, which addresses plaintiff's statutory and constitutional claims, and any other grounds upon which defendants seek summary judgment. The court notes that the brief filed by defendants as to that motion fails to address the statutory claim.

3. Plaintiff's opposition shall be filed within twenty days of service of defendants' new brief as to their motion for summary judgment.

Further, IT IS HEREBY RECOMMENDED that plaintiff's March 31, 2006 and May 4, 2006, motions for a preliminary injunction be denied.

1  These findings and recommendations are submitted to the United States District Judge
2 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days
3 after being served with these findings and recommendations, any party may file written
4 objections with the court and serve a copy on all parties.  Such a document should be captioned
5 "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections
6 within the specified time may waive the right to appeal the District Court's order.  *Turner v.*
7 *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
8 DATED:   March 30, 2007.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE